949 F.2d 399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
Transmix Corp., Intervenor-Appellee,
v.
CANYON COUNTRY ENTERPRISES, INC., dba Curtis Sand & Gravel,
Defendant-Appellant.
 No. 90-55302.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided Dec. 5, 1991.
 
 1
 Before BEEZER, CYNTHIA HOLCOMB HALL and HOLLOM B WIGGINS, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Pursuant to a settlement agreement with Canyon Country Enterprises, Inc., dba Curtis Sand and Gravel (Curtis), the Bureau of Land Management (BLM) offered sand and gravel rights for competitive sale. Transmix Corporation (Transmix) outbid Curtis. Curtis moved to enforce the settlement agreement according to Curtis' interpretation and to enjoin the government from contracting with Transmix. The district court denied the motion by final order and Curtis appealed. We affirm.
 
 
 4
 * Several hundred acres of land form the core of the case. This land is subject to a patent granted under the Stock Raising Homestead Act of 1916. 43 U.S.C. §§ 291-299 (1988), repealed by Section 702 of the Federal Land Policy and Management Act of 1976, Pub.L. No. 94-579, 90 Stat. 2743, 2789 (1976). Pursuant to the Act, the United States retained title to "all the coal and other minerals" in the patented land, though private parties acquired the surface estate.
 
 
 5
 This patent, No. 1068545, has two salient characteristics. The first is its division into two non-contiguous parcels. Township sections 9 and 16 include approximately 440 acres of patented land; township sections 1 and 12 include approximately 200 acres of patented land. Several miles of undeveloped land separate the two.
 
 
 6
 The second characteristic is the differing uses for the two parcels. The smaller parcel has not been excavated, and the government expects it will not be excavated until the reserves in sections 9 and 16 are exhausted. Transmix points to a 1987 California study that identified no sand or gravel in commercially valuable quantities in sections 1 and 12.
 
 
 7
 For approximately twenty years, however, Curtis and its predecessors-in-interest excavated sand, rock and gravel from a site on the larger parcel. The company operated here pursuant to written leases with Mr. Clare Schweitzer, owner of the patented land, and then with William P. Willman, executor of Schweitzer's estate.
 
 
 8
 In 1983, the United States Supreme Court determined that gravel is a "mineral" reserved to the government under the terms of the Act. Watt v. Western Nuclear, Inc., 462 U.S. 36, 60 (1983). The United States subsequently brought a trespass action against Curtis and Willman, Curtis' lessor. Curtis cross-claimed against Willman. In June 1988, the parties entered into a settlement agreement, which the district court approved.
 
 
 9
 The agreement obliged BLM to hold a competitive bid for the excavation rights. The agreement supplemented the agency's competitive bid regulations in three ways. See 43 C.F.R. § 3610 (1990). First, the agency would offer two consecutive 10-year sand and gravel contracts rather than one 10-year contract. Second, the agency would review the royalty rate after four rather than two years. Third, and most significantly, the agency would require all bidders to prequalify by demonstrating a "right to access to the subject property." This provision reads as follows:
 
 
 10
 The Notice Inviting Bid will require all bidders to prequalify by submitting written evidence to the United States that they have a present possessory right to access to the subject property and a present possessory right to water available in a quantity of no less than 350 gallons per minute to be used for manufacturing purposes.
 
 
 11
 The agreement also obliged Willman to sell Curtis the land it had been leasing. This transaction has been completed; Curtis now owns the surface estate to all the land covered by Patent No. 1068545, as well as additional nearby land.
 
 
 12
 In October 1988, BLM decided to offer only part of the patented land, approximately 160 acres in sections 9 and 16, for competitive bid. The district court agreed with Curtis that this violated the settlement agreement. It ordered that all the patented property be offered. After resolving a subsequent dispute with Curtis over minimum bid levels, BLM published an acceptable notice of sale. It referenced the settlement agreement and relevant regulations, described all the patented land and recited the prequalification requirements.
 
 
 13
 Both Curtis and Transmix submitted proof of their access rights by way of an easement from a public road to the patented land in sections 9 and 16. Both submitted proof of their right to draw sufficient water from a source near sections 9 and 16. Curtis also submitted proof of its ownership (excepting minerals) of all the patented land, including that in sections 1 and 12. Neither Curtis nor Transmix submitted proof, however, of an access right to this smaller parcel. Curtis offered a total bid of $16,500,000.[1] Transmix offered a total bid of $28,080,000.[2] There were no other bids.
 
 
 14
 BLM declared its intent to award the two 10-year contracts to Transmix. Curtis objected, arguing that Transmix had failed to prequalify because it lacked access to all the patented property. The agency disagreed, and Curtis moved to enforce the settlement agreement and to award the contracts to Curtis instead of Transmix. Transmix intervened. The court denied Curtis' motion and this appeal timely followed.
 
 II
 
 15
 "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989). We review de novo the district court's interpretation of contractual language and principles of contract interpretation. We review for clear error the district court's factual findings. Insurance Co. of Pa. v. Associated Int'l Ins. Co., 922 F.2d 516, 520 (9th Cir.1990).
 
 
 16
 The government argues that in exercising its review powers, we should defer to BLM's interpretation. BLM is the agency charged with administering these competitive mineral bids. As such, it is specially competent to assess the sufficiency of bids. Furthermore, the regulations and the notice of sale specifically recognize BLM's right to waive minor bid deficiencies. 43 C.F.R. § 3610.3-3(b). Therefore, the government argues, BLM's decision should be upheld unless it is arbitrary, capricious or an abuse of discretion. See Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A) (1988). We disagree.
 
 
 17
 The APA's narrow, highly deferential standard applies to informal decisions within an agency's area of expertise. See, e.g., Norfolk Energy, Inc. v. Hodel, 898 F.2d 1435, 1439 (9th Cir.1990) (affirming agency's imposition of a fine for failure to provide drawings of gas production unit on land subject to regulation); National Wildlife Fed'n v. Burford, 871 F.2d 849, 855 (9th Cir.1989) (affirming agency award of coal lease pursuant to regulations). Deference should not apply where analysis of a disputed clause rests on contract principles rather than on matters of agency expertise. See Texas Gas Corp. v. Shell Oil Co., 363 U.S. 263, 268-70 (1960) (affirming the de novo standard of review applied by the appellate court to an agency's interpretation of a non-technical contract clause).
 
 
 18
 Here, the phrase "access to the subject property" emerged from settlement negotiations. It is not found in the agency regulations. Its meaning is not linked to matters within BLM's expertise. BLM is not more competent than the courts to determine whether the parties intended access to the entire property. Accordingly, we do not defer to BLM's decision on this issue.
 
 
 19
 Another preliminary question concerns the choice of law. Curtis contends that California law governs. Curtis correctly notes that as a general rule, "the construction and enforcement of settlement agreements are governed by principles of local law...." Airline Stewards v. Trans World Airlines, Inc., 713 F.2d 319, 321 (7th Cir.1983) (citation omitted); see also Jeff D., 899 F.2d at 759 (applying Idaho law to interpret a settlement agreement between private parties). With limited exceptions, however, "[f]ederal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party." Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir.1989). Here, the United States is a party to the settlement agreement and the dispute stems from a federal law.
 
 
 20
 One exception to this rule is that state law applies where no substantial federal rights or duties hinge on the litigation's outcome and there is little need for a nationally uniform body of law. Miree v. Dekalb County, 433 U.S. 25, 31-33 (1977) (applying state law to determine if petitioners are third party beneficiaries to a government contract). An exception is not warranted here. The duties of the United States are at issue and the general need for uniform interpretation of government contracts applies. In any case, the applicable contract interpretation principles are general and unexceptional. California law compels the same conclusion.
 
 
 21
 The starting point in interpreting a contract is the intent of the parties as expressed by the plain meaning of the document. Kennewick Irrigation Dist., 880 F.2d at 1032. Curtis argues that "access to the subject property" is plainly susceptible to only one meaning. It can only mean access to the entire property because a reference to "the" property means the whole property. Dynan v. Gallinatti, 87 Cal.App.2d 553, 555, 197 P.2d 391, 392 (1948) (statutory reference to "the" household furniture means all the household furniture). Furthermore, the document includes Curtis' agreement to purchase the patented land in sections 1 and 12, indicating that these parcels were an integral part of the agreement. Additionally, Curtis notes that the district court earlier determined that the agreement required the government to offer the entire patented land for competitive bid.
 
 
 22
 Curtis' analysis supports the argument that "the subject property" includes all of patent No. 1068545. The government concedes this. Curtis' analysis does not support a singular definition of "access."
 
 
 23
 As the government notes, the overall purpose expressed in the agreement is to provide for the right to excavate somewhere on the patented land. Neither the agreement nor the regulations it references require excavation on both parcels. The notice of sale states that the successful bidder will be required to submit a plan showing where it intends to excavate. It is unreasonable to require access to an area that will not be utilized. Absent strong evidence of intent, we avoid interpretations which lead to unreasonable results. Shakey's, Inc. v. Covalt, 704 F.2d 426, 434 (9th Cir.1983). The access requirement is susceptible to more than one interpretation, and is therefore facially ambiguous. United States v. Haas & Haynie Corp., 577 F.2d 568, 572-73 (9th Cir.1978).
 
 
 24
 We follow the rule that extrinsic evidence of the parties' intent may be considered in interpreting an ambiguous contract provision. Id. Curtis points to pre-negotiation communications to show that the parties intended to recognize the time and money the company expended developing its sand and gravel operation before Watt changed the rules. For this reason, Curtis argues, the parties tailored the agreement to provide a longer contract term and delayed royalty reappraisal. Recognition of Curtis' investment also motivated the government to accept the access and water prequalification requirements. This analysis does not advance Curtis' broad definition of access because the company had not established an excavation site, access road or water well on sections 1 and 12. Curtis' advantages as the owner of an existing sand and gravel operation related to sections 9 and 16.
 
 
 25
 The government acknowledges that the parties intended to give Curtis an edge in the bidding process. An additional, non-contradictory intent was to insure that the successful bidder could fulfill the contracts. The district court agreed and found that "[t]he purpose of the requirement ... was to insure that the bidder could fulfill its bid obligations."
 
 
 26
 Fulfilling the contracts does not require excavation in sections 1 and 12. The maximum possible bid was 100 million tons of sand and gravel. BLM estimated that sections 9 and 16 contained 180 million tons. The district court found that "there are sufficient reserves located in Sections 9 and 16 to permit Transmix to fulfill its bid requirements." This finding is not clearly erroneous.
 
 
 27
 It is well established in this circuit that the trier of fact may consider "the parties' conduct subsequent to contract formation," and that "such conduct is to be given great weight" in determining the parties' intent. Laborers Health and Welfare Trust Fund v. Kaufman & Broad, Inc., 707 F.2d 412, 418 (9th Cir.1983) (citations omitted). Curtis' bid materials detailed the company's easement providing access to sections 9 and 16, but did not mention access to sections 1 and 12. Curtis now states that by virtue of its fee ownership in the smaller parcel, it could easily acquire an easement by necessity pursuant to California law. This might be true, but it was not mentioned in the bid materials. If Curtis believed the agreement required complete access, its bid materials probably would have explicitly reflected that belief.
 
 
 28
 The district court determined that "Transmix presented written evidence of a present possessory right of access to the subject property sufficient to comply with the settlement agreement and Notice of Sand and Gravel Sale." We agree that the government complied with the terms of the Settlement Agreement in accepting Transmix' bid. Since we affirm on this basis, it is unnecessary for us to discuss the district court's alternate finding that the BLM could consider lack of complete access a minor deficiency subject to waiver under 43 C.F.R. § 3610.3-3(b).
 
 III
 
 29
 The district court's order denying Curtis' motion is affirmed, with each party to bear its own costs.
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Curtis bid the minimum royalty rate of $.165 per ton for 100 million tons
 
 
 [2]
 Transmix bid $.50 per ton for 56,160,000 tons