**UNITED STATES of America,**
**Plaintiff,**

v.

**TALLEY DEFENSE SYSTEMS,**
**INC., Defendant.**

**No. CIV. 04–1399PHXJWS.**

United States District Court,
D. Arizona.

Aug. 16, 2005.

John B. Snyder, III, US Dept of Justice Tax Division, Washington, DC, for Plaintiff.

Kevin E. O'Malley, Mark Andrew Fuller, Gallagher & Kennedy PA, Phoenix, AZ, Luis Leon Granados, III, William L. Goldman, McDermott Will & Emery LLP, Washington, DC, for Defendant.

### ORDER FROM CHAMBERS [Re: Motions at Docket 25, 29]

SEDWICK, District Judge.

### I. MOTIONS PRESENTED

At docket 25, Defendant Talley Defense Systems, Inc. ("Talley") moves for summary judgment against United States of America ("USA"). At docket 29, USA also moves for summary judgment. Oral argument was heard August 9, 2005.

### II. BACKGROUND

The dispute currently before the court concerns the amount of interest paid on a tax refund made by USA to Talley. In 2001, Talley filed a complaint in this court seeking a refund of overpaid excise tax for the 2000 tax year in the amount of $2,254,603, plus interest (the "Excise Tax Case").[1] Talley moved for summary judg-

---

1. Docket 26, Exhibit B.

ment in the Excise Tax Case,[2] and USA later approved a concession, authorizing and directing the Internal Revenue Service ("IRS") to refund the overpayment, plus interest according to law.[3]

On March 11, 2003, IRS issued a refund check to Talley in the amount of $2,628,662.77 consisting of a $2,254,603 tax refund and a $374,059.77 interest payment.[4] On March 20, 2003, in exchange for the check, Talley delivered to USA a signed stipulation of dismissal of the suit.[5] On March 23, 2003, USA filed the stipulation of dismissal.[6] On March 26, 2003, the court entered an order approving the stipulation and dismissing the suit with prejudice, each party to bear its own costs and fees.[7]

On July 8, 2004, USA brought the instant suit against Talley, alleging that the interest component of the check issued to Talley was overstated and seeking to recover the amount of the overpayment plus interest.[8] Talley resists USA's claim on two grounds: First, USA's claim is barred by *res judicata.* Second, the agreement to settle the Excise Tax Case is a binding contract which precludes USA's claim.

Additional facts are noted and discussed in section IV below.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[9] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[10] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are disputed so that a fact-finder must resolve the dispute at trial.[11] The court must not assess the credibility of this evidence, and must draw all justifiable inferences from it in favor of the nonmoving party.[12]

## IV. DISCUSSION

### A. Res Judicata

■■■ *Res judicata* embraces two concepts, claim preclusion and issue preclusion, that bar "a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action."[13] The doctrine of claim preclusion bars "all grounds for recovery which could

2. *Id.,* Exhibit C.

3. *Id.,* Exhibit D.

4. Declaration of Patricia Voigt, docket 32 at ¶¶ 3 and 7 referencing Exhibit A (check) and B (interest calculation) attached thereto. It may be noted that the declaration's paragraphs are mis-numbered. It contains no ¶¶ 4 and 5.

5. Docket 26, Exhibit A at ¶ 12.

6. *Id.* at ¶ 14.

7. *Id.* at ¶ 15; a copy of the order is at Exhibit G to docket 26.

8. *See* Complaint at docket 1.

9. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

10. *Id.* at 325, 106 S.Ct. 2548.

11. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

12. *Id.* at 255, 106 S.Ct. 2505.

13. *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir.1986).

have been asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action ...."[14] Issue preclusion, on the other hand, bars "the relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action."[15] In applying claim preclusion and issue preclusion based on a prior proceeding, a court should make "an examination of the record, if one exists."[16] The party asserting preclusion "bears the burden of showing with clarity and certainty what was determined by the prior judgment."[17] "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."[18]

■ Talley sought to recover a tax refund plus interest pursuant to 26 U.S.C. § 4980 in the Excise Tax Case. USA instituted the current action under 26 U.S.C. § 7405, to recover an alleged erroneous interest payment on the tax refund made to Talley. The allegedly erroneous payment of interest could not have been litigated in the prior lawsuit, so the preclusive effect of the Excise Tax Case on the current action, if any, stems from issue preclusion rather than claim preclusion.

Talley asserts that the amount of interest to be paid was raised and resolved in the Excise Tax Case. As the party asserting preclusion, Talley has the burden to show with clarity and certainty that the issue was determined there. The order dismissing the Excise Tax Case provided that "pursuant to stipulation of the parties, the complaint in the above-entitled case (Talley Defense Systems, Inc. v. United States, CIV–01–0986–PHX–RCB) is dismissed with prejudice."[19] Neither the order nor the stipulation filed with the court specified the issues resolved, nor any of the substantive terms underlying the stipulation of the parties. Given the insufficient record in the Excise Tax Case, this court is unable to pinpoint the issues decided there. Consequently, the dismissal of the Excise Tax Case does not preclude USA's current claim.

Talley's reliance on the Fifth Circuit's decision in *Matter of West Texas Marketing Corp.*,[20] to establish the applicability of *res judicata* is unavailing. In *West Texas Marketing*, after the bankruptcy court had approved a settlement between the parties, IRS brought an adversary proceeding to recover its alleged overpayments in connection with the tax refund it made to taxpayer. The Fifth Circuit Court of Appeals held that the settlement agreement qualified as final judgment on the merits with *res judicata* effect.[21] An important distinction exists between that case and the Excise Tax Case. In *West Texas Marketing*, plaintiff Kellogg attached copies of its offer and USA's acceptance in its motion for settlement approval.[22] It also included an attachment summarizing the terms of the settlement, as well as an addendum providing the means by which the final amount owed by the parties could be calculated.[23] The Fifth Circuit decided

**14.** *Id.* (quoting from *Ross v. Int'l Bhd. of Elec. Workers,* 634 F.2d 453, 457 (9th Cir.1980)).

**15.** *Shaw v. California Dept. of Alcoholic Bev. Control,* 788 F.2d 600, 605 (9th Cir.1986).

**16.** *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1321 (9th Cir.1992).

**17.** *Id.*

**18.** *Id.* (quoting from *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.1979)).

**19.** Docket 26, Exhibit G.

**20.** 12 F.3d 497 (5th Cir.1994).

**21.** *Id.*

**22.** *Id.* at 499.

**23.** *Id.*

that, notwithstanding the parties' failure to specify the exact dollar amount of their settlement, "a judgment for monetary damages is final even if it merely specifies the means for determining the amount of the judgment."[24] In the Excise Tax Case, however, no evidence of the agreement between the parties, not even the method to calculate the final dollar amount, ever became part of the court's record. Accordingly, this court cannot, consistently with Ninth Circuit precedent,[25] apply preclusive effect to the judgment in the Excise Tax Case.

## B. The contract claim

Talley also alleges that the agreement between the parties to settle the Excise Tax Case constitutes an enforceable contract, which provides "an independent basis for Talley's right to receive and retain the amount of money promised by USA, even before the stipulation of dismissal with prejudice was filed with the court."[26] USA disputes Talley's position, and alleges that because it conceded the case, no bargaining took place and there was no contract.

### 1. Agreement between the parties constituted an enforceable contract

■ Documents relevant to the alleged contract include two letters addressed to Talley by USA dated December 9, 2002, and January 9, 2003.[27] Enclosed with the second letter was a copy of the interest calculation, detailing the quarterly interest payments on the tax refund ($2,254,603) from December 4, 2000, through Decem-

ber 31, 2002, totaling $349,332.24.[28] Both letters included a copy of the stipulation which provided that the parties agreed to dismiss the case with prejudice and bear their respective costs.

The letters and the parties' conduct are at odds with USA's denial of contract formation. In its December 9, 2002 letter, USA notified Talley that it was making a "concession," but did not stop there. Instead, USA insisted Talley deliver the signed stipulation before IRS issued the refund check.[29] Referring to this correspondence as "the United States' offer acceptance letter," USA wrote to Talley again on January 9, 2003, and modified the requirement regarding the stipulation saying, "you may retain the stipulation until we receive the check, but we must receive the signed stipulation before we will release the check."[30] The language in both letters makes it clear that USA's payment was conditioned upon Talley's execution and delivery of the signed stipulation of dismissal. Moreover, the second letter characterizes the first as the acceptance of an offer. The execution of a written instrument "surrendering a claim or defense by one who is under no duty to execute it is consideration if the execution of the written instrument is bargained for even though he is not asserting the claim or defense and believes that no valid claim or defense exists."[31] On March 20, 2003, Talley and USA physically exchanged the executed stipulation and the refund check, thereby performing the acts the letters say had been agreed. The evidence shows mutual assent to the exchange of valuable

**24.** *Id.* at 501 (citing *Zink v. United States,* 929 F.2d 1015, 1020 (5th Cir.1991)(per curiam)).

**25.** *See Clark,* 966 F.2d at 1321.

**26.** Docket 27 at 12.

**27.** Docket 26, Exhibit D, E.

**28.** *Id.,* Exhibit E.

**29.** *Id.,* Exhibit D.

**30.** *Id.,* Exhibit E.

**31.** Restatement (Second) of Contracts § 74(2) (1981).

consideration. That is the essence of a contract.

■ USA's characterization of its payment as a concession which somehow forecloses the possibility that there was a contract is not persuasive. Its assertion that "the United States simply determined that a full concession of the case was appropriate and scheduled payment of the refund without any involvement by taxpayer whatsoever"[32] contradicts the record. Indeed, USA in its own complaint acknowledged that "pursuant to the parties' settlement," IRS issued Talley a refund check in the amount of $2,628,662.77.[33] "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."[34] Accordingly, this court will treat the agreement as a binding contract between the parties.

## 2. Terms of the contract

■ USA takes the position that even if there were a contract, its terms did not include an agreement to pay the amount of interest actually paid. The dispute centers on the interest calculation enclosed with the January 9, 2003 letter. According to Talley, that calculation defined the interest payment required by the contract. USA asserts that the interest payment required by the contract was the amount due "according to law," so that the calculation included with the second letter was a change in the terms of the contract evidenced in the December 9, 2002 letter. It follows, argues USA, that the computation accompanying the second letter should be disregarded as parol evidence.

The Ninth Circuit instructs that "[f]ederal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party. For guidance, we look to general principles for interpreting contracts."[35] That court has elaborated as follows:

A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first.[36]

■ Before applying the parol evidence rule to exclude evidence, the court needs to make preliminary determinations that there is an integrated agreement which is inconsistent with the evidence asserted to be parol.[37] The court should consider all relevant evidence, including "agreements and negotiations prior to or contemporaneous with the adoption of a writing."[38] In the instant case, the contract is evidenced at a minimum by the first letter from USA to Talley. That letter refers to an enclosed computation. The second letter acknowledges that the first letter inadvertently omitted the computation and purports to cure the error by actually enclosing the calculation. The December 9, 2002 letter, therefore, did not constitute a final expression of the terms regarding the amount of the interest pay-

**32.** Docket 34 at 2.

**33.** Complaint at 8.

**34.** *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989).

**35.** *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999).

**36.** *Id.*

**37.** *See* Restatement (Second) of Contracts § 209(2) (1981).

**38.** Restatement (Second) of Contracts § 214 (1981).

ment, because it was meant to have included a calculation which was not supplied until the January 9, 2003 letter was sent. The December 9, 2002 letter is therefore not an integrated agreement. Consequently, the parol evidence rule does not apply to the January 9, 2003 letter, and the interest computation included with it is part of the contract. An inquiry into the parties' actions also supports the conclusion that the interest calculation enclosed with the January 9, 2003 letter constituted part of the contract between them. USA's check delivered in performance of its obligation under the contract included an interest payment consistent with the calculation.[39]

### 3. There was a mistake

The parties dispute whether there was a mistake in the calculation of the interest reflected in the January 9, 2003 letter. USA asserts that, according to 26 U.S.C. § 6621, the overpayment interest rate is "the sum of the federal short-term rate plus 3 percentage points (2 percentage points in the case of a corporation)."[40] To the extent that overpayment of tax by a corporation exceeds $10,000, "the interest rate is the sum of the federal short term rate plus 0.5 percentage point."[41] In calculating the interest on Talley's tax refund, according to USA, it "erroneously applied the interest rate for noncorporations rather than the lower, proper rate that applied to corporations."[42] In her declaration, Patricia Voigt, an analyst at Accounting Operations of IRS, noted that the March 11, 2003 refund check issued to Talley was

"overstated due to a clerical error."[43] She also provided an interest calculation showing the "correct" amount of interest to be $230,055.75, which means that an overpayment of $144,004.02 was made to Talley.[44]

According to Talley, among the issues involved in determining the correct amount of interest, the most significant one is "whether the overpayment interest rate for an S corporation should be the same as the rate for non-S corporations or the same as that for individuals."[45] Hassan Mirza, Talley's Chief Financial Officer, in his declaration, confirmed Talley's status as an S corporation and the fact that Talley has filed federal income tax returns consistently with such status since its federal income tax return for calendar year 2000.[46]

The Ninth Circuit has stated that, "[u]nder [26 U.S.C.] § 6241, Congress provided that tax determinations for S corporations would take place at the corporate level, except where the Secretary provided otherwise by regulations."[47] Talley cites no regulation which calls for the treatment of an S corporation differently from non-S corporations concerning interest on refunds of tax payments. Yet, to give Talley the higher rate applicable to individuals would be to make a determination at a level different from the corporate level of organization. In the end, Talley does little more than vaguely conclude that "it would appear to be consistent with [Congress's] intent for the refunds on tax paid by an S corporation to bear interest at the rate paid to individual shareholders under 26

---

**39.** Of course, the amount of interest paid in March was larger than shown in the January letter, because two more months of interest had accrued.

**40.** 26 U.S.C. § 6621(a)(1).

**41.** *Id.*

**42.** Complaint at 8.

**43.** Docket 32 at ¶ 6.

**44.** *Id.* at ¶¶ 7–11.

**45.** Docket 37 at 1.

**46.** *Id.,* Exhibit A.

**47.** *Twenty–Three Nineteen Creekside, Inc. v. C.I.R.* 59 F.3d 130, 133 (9th Cir.1995).

U.S.C. § 6621(a)(1), and not necessarily at the lower rate paid to a corporation."[48] In the absence of a contrary regulation, this court concludes that the normal corporate rate rather than the higher rate for individuals should apply to Talley as an S corporation. That being so, the interest paid to Talley was erroneously calculated.

### 4. The contract is not voidable

USA urges the court to refuse to enforce the contract because of the mistake with respect to the amount of interest to be paid. There is no evidence that Talley made any mistake with respect to the interest paid by USA. Rather, the evidence shows that the mistake was made unilaterally by USA. A unilateral mistake that has a material effect on the agreed exchange of performances and that is adverse to the mistaken party renders a contract voidable if the mistaken party does not bear the risk of the mistake and the other party had reason to know of the mistake or that party's fault caused the mistake.[49]

Given the size of the error, it may be assumed that the erroneous interest calculation was material to the agreed exchange. However, it was USA, the party with expertise and experience in calculating interest on tax refunds, which calculated the amount to be paid. USA decided what overpayment interest rate to apply and made the actual calculation. It used no input from Talley. USA was the only party in a position to know if a mistake were made, and so it bears the risk of mistake. There is no evidence that Talley had any reason to know of the mistake. Certainly, the mistake was not caused by anything Talley did. Under these circumstances, the contract is not voidable.

*V. CONCLUSION*

For reasons set out above, Talley's motion for summary judgement at docket 25 is **GRANTED** and USA's motion for summary judgement at docket 29 is **DENIED**.

---

**48.** Docket 37 at 2.

**49.** *See* Restatement (Second) of Contracts § 153 (1981).