**JEFF D., John M., Paula E., Dusty R.,** minors individually and on behalf of the class they represent by and through their friend Charles Johnson, Plaintiffs–Appellees,

v.

**Dirk KEMPTHORNE, individually and in his official capacity as Governor of the State of Idaho; Marilyn Howard, individually and in her official capacity as State Superintendent of Public Instruction of the Idaho State Department of Education; Karl Kurtz, individually and in his official capacity as Director of the Idaho Department of Health and Welfare; George Bachik, William G. Gruzenski, individually and in their official capacities as Directors of State Hospital South, and their successors,\* Defendants–Appellants.**

No. 00–35948.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2002.

Filed April 23, 2004.

---

\* Pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure, the following individuals have been substituted for their predecessors: Dirk Kempthorne for Cecil D. Andrus as Governor of Idaho; Marilyn Howard for Jerry Evans as State Superintendent of Public Instruction of the Idaho State Department of Education; and Karl Kurtz for Richard Donovan as Director of the Idaho Department of Health and Welfare.

Jody P. Carpenter, Deputy Attorney General, Boise, ID, for the defendants-appellants.

Howard A. Belodoff, Belodoff Law Office, Boise, ID, for the plaintiffs-appellees.

Before BROWNING, B. FLETCHER, and GOULD, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

For over two decades, the district court has overseen a series of consent decrees entered into by appellants, the Governor of Idaho and other state officials, to remedy alleged constitutional and statutory violations in the provision of services to a class of more than 2,000 indigent Idaho children who suffer from severe emotional and mental disabilities. At this stage of the litigation, the state officials invoke Eleventh Amendment immunity and also contend that the district court no longer has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to enforce the consent decrees. In essence, after promising so much over the past twenty years, the officials now claim that those promises are not enforceable. The district court rejected these arguments, and the state officials have appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that the district court continues to have jurisdiction and that the Eleventh Amendment

does not bar the enforcement of the consent decrees. We therefore affirm and return this case to the district court.

## I. Factual Background and Procedural History

The history of this case is a sad record of promises made and broken over two decades. The defendants[1] have repeatedly promised to provide appropriate services to the plaintiffs, who are a class of severely emotionally and mentally disabled children in the State of Idaho. In 1980, the complaint was filed in this case on behalf of 2,000 indigent children, and the parties eventually stipulated to class certification. *See Jeff D. v. Andrus*, 899 F.2d 753, 757 (9th Cir.1989). The complaint alleged that the state officials had violated the class members' rights under the U.S. Constitution, the Idaho Constitution, and federal and state statutes. Among other things, the complaint alleged that some of the plaintiffs had been hospitalized in facilities along with adults, some of whom were known sexual predators and child molesters. The complaint sought only declaratory and injunctive relief.

The defendants filed their answer setting forth multiple defenses to the plaintiffs' action, including Eleventh Amendment immunity. They also alleged that the plaintiffs had failed to state a claim upon which relief could be granted.

In 1981, the parties settled a number of claims relating to the provision of educational services. Other claims remained, however, and the parties filed cross-motions for summary judgment. The district court dismissed several of the plaintiffs' federal statutory claims, but found that there were disputed issues of material fact as to the plaintiffs' claims under the U.S. Constitution and under Idaho law.

In 1983, pursuant to subsequent negotiations, the parties resolved a number of claims relating to alleged constitutional violations in the provision of mental health care to the class members. In a settlement agreement, the defendants agreed to end the practice of placing children in adult facilities and to provide a range of community-based services for children who would not need in-patient care. The agreement offered virtually all of the injunctive relief that the plaintiffs sought. It specifically required the defendants, among other things, to prepare a needs assessment of children's mental health programs and to provide the class members with facilities and staff for community-based mental health programs and services. The agreement also provided for continuing jurisdiction by the district court for five years or until the district court was satisfied by stipulation or otherwise that the claims for relief were adequately addressed. The agreement was duly entered as a consent decree by the district court in April 1983.

Although this court subsequently invalidated portions of the consent decree that were unrelated to the remedies for the alleged substantive injuries, *see Jeff D. v. Evans*, 743 F.2d 648 (9th Cir.1984), the Supreme Court reinstated the decree as entered by the district court. *See Evans v. Jeff D.*, 475 U.S. 717, 742–43, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).[2] Shortly af-

---

1. Throughout this opinion we refer to the Idaho officials defending this action as "the state officials" or "the defendants."

2. This set of appeals involved a provision of the 1983 consent decree which waived any attorneys' fees that plaintiffs' counsel could have obtained under 42 U.S.C. § 1988. This court struck down that provision, but the Supreme Court reversed. The Supreme Court based its decision on the fact that "the extensive structural relief[the plaintiffs] obtained constituted an adequate *quid pro quo* for their

ter the Supreme Court's decision, another dispute emerged between the parties as to the scope of the plaintiff class, resulting in another appeal to this court. *See Jeff D. v. Andrus,* 899 F.2d 753 (9th Cir.1989); *see also Jeff D. v. Andrus,* 861 F.2d 591 (9th Cir.1988).

By the late 1980s, there were serious concerns about the state's compliance with the consent decree and the plaintiffs filed a motion to enforce it. The parties again negotiated a settlement and eventually stipulated to a supplemental agreement in December 1990. The agreement reiterated the defendants' obligation to prevent hospitalization of the class members in adult facilities, and expanded the defendants' agreement in 1983 to ensure "an available, accessible continuum of alternative community-based treatment facilities and residential programs providing mental health services to [the] plaintiffs . . . ." The 1990 agreement also required the defendants to prepare legislative budget requests to fund the programs that were agreed upon. As contemplated by the parties, the district court entered the agreement as a consent decree.

This decree did not end the difficulties, however. In 1993, the plaintiffs filed a motion with the district court requesting that the defendants be ordered to comply with the decrees. The matter was referred to a magistrate judge. The defendants did not contest that they were failing to comply with the agreements regarding the provision of community-based services and, with the plaintiffs, submitted a joint proposed report and recommendation that was adopted by the magistrate judge. The district court adopted the recommendation of the magistrate judge and entered an additional order requiring the defendants immediately to allocate a minimum level of resources—as recommended by

the defendants themselves—to each of seven regions within the state for the provision of the agreed-upon community services.

Because the plaintiffs continued to contend that the defendants had not complied with the decrees, the defendants agreed in 1995 to conduct independent evaluations of the state's mental health system for children and of the defendants' compliance with the decrees. Beginning in 1997, the defendants themselves hired outside experts to conduct a thorough evaluation of their compliance. Based on the results of this compliance review ("the 1998 Compliance Review"), the plaintiffs moved for a finding of contempt against the defendants in March 1998. The defendants, however, negotiated yet another compliance agreement that provided for an additional independent needs assessment and the creation of a compliance action plan. The defendants also agreed to submit "requests for funding to the Joint Finance and Appropriation Committee of the Idaho State Legislature," and agreed in principle with the findings and recommendations made in the 1998 Compliance Review. The district court approved the compliance agreement in December 1998 as a third consent decree, and one which resolved the plaintiffs' motion for contempt.

As required by the 1998 agreement, the defendants' independent experts completed their needs assessment in June 1999. A large portion of the report's recommendations focused on community-based outpatient care. The defendants, accordingly, developed a compliance plan for the needs assessment's recommendations.

However, the plaintiffs objected to the defendants' proposed plan, and by 2000, the plaintiffs again moved for a finding of

waiver of attorney's fees." *Evans v. Jeff D.,* 475 U.S. at 741, 106 S.Ct. 1531.

contempt and for the district court formally to adopt the needs assessment itself as the defendants' compliance plan. Instead of negotiating this time, the defendants objected and filed a brief response. The defendants also filed a motion to dismiss the case and to vacate the consent decrees under Rule 60(b) of the Federal Rules of Civil Procedure. The defendants argued that the district court no longer had subject matter jurisdiction over the consent decrees because the decrees did not redress continuing violations of federal law, and thus jurisdiction was improper under 28 U.S.C. § 1331. The defendants also claimed that the continued enforcement of the consent decrees was barred by the Eleventh Amendment.

The district court held a hearing on the parties' motions on August 29, 2000. The court indicated that it planned to deny the defendants' motions to dismiss the case or vacate the consent decrees; it noted that it had continuing jurisdiction to enforce the decrees under *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 389, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). The district court also found that no showing had been made to justify modifying or vacating the consent decrees that had been previously entered. The court took the plaintiffs' motion for contempt under consideration. On September 28, 2000, the district court issued a memorandum decision denying plaintiffs' motion for contempt. Although it noted that it was "growing weary" with the state's failure to comply with the consent decrees, the court gave additional time for the defendants to "comply with the Court's orders and to fulfill the promises embodied by the Consent Decrees." On September 29, 2000, the district court entered an order formally denying the defendants' motions to dismiss the suit and to vacate the consent decrees. The defendants filed this timely appeal.

## II. Appellate Jurisdiction

We must first turn to the question of our own jurisdiction to hear this appeal. The plaintiffs contend that we lack jurisdiction to entertain this appeal because the district court's order was not final. The defendants argue that we have jurisdiction over their appeal under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

For the most part, both sides are wrong. The collateral order doctrine is largely inapplicable in this case. The doctrine establishes "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (internal quotations and citations omitted). In order to fall into this class of immediately appealable orders, a district court decision must be conclusive, resolve important questions completely separate from the merits, and render such important questions effectively unreviewable on appeal from a final judgment in the underlying action. *Id.* None of the decisions that the defendants challenge, with the exception of the district court's determination that the defendants do not enjoy Eleventh Amendment immunity, *see P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–44, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), satisfy the collateral order doctrine's requirement that the issues resolved be completely separate from the merits. To the contrary, the district court's determinations plainly are intimately intertwined with the merits of this litigation.

Nonetheless, we have an obligation to investigate and ensure our own

jurisdiction, *see United States v. Ceja–Prado*, 333 F.3d 1046, 1049 (9th Cir.2003), and we conclude that we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The defendants filed two different motions at the district court, in which they raised essentially the same arguments. One of these was a "Motion to Vacate the Consent Decrees," brought under Rule 60(b) of the Federal Rules of Civil Procedure. Denials of motions to vacate the judgment under Rule 60(b) are appealable as final orders under 28 U.S.C. § 1291. *See Stone v. INS*, 514 U.S. 386, 401, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir.1990); *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir.1982). Because consent decrees are considered final judgments, *see Stone v. City and County of San Francisco*, 968 F.2d 850, 854(9th Cir.1992), we have jurisdiction to review the claims raised in the motion to vacate the consent decrees pursuant to 28 U.S.C. § 1291.[3]

We recognize that, in the context of structural litigation, allowing parties to appeal from the denial of motions to vacate consent decrees can create unfortunate incentives. Recalcitrant defendants may file motions to vacate simply to delay the implementation of the decrees in the district court. Many aspects of our judicial system are open to such abuse. However, courts have the appropriate tools to remedy bad faith appeals. In particular, the awarding of attorneys' fees and sanctions can be an effective deterrent to prevent significant abuse. *Cf. Hutto v. Finney*, 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (noting that the awarding of attorneys' fees can vindicate the district court's authority over a recalcitrant litigant).

■ We must address one additional issue regarding our appellate jurisdiction. Besides the finality issue and Eleventh Amendment immunity claim raised in the motion to vacate, the defendants also seek to appeal what they describe as an expansion of the plaintiff class by the district court. The defendants refer to a portion of the district court's order denying the plaintiffs' motion for contempt, in which the district court interpreted a disputed provision of the 1998 consent decree. The court read that provision in the expansive way preferred by the plaintiffs rather than the narrow way suggested by the defendants. That determination was clearly not final, however, since the district court refused to hold the defendants in contempt. If and when the district court finds defendants in contempt, they can appeal the district court's determination of the disputed provision. *See Stone*, 968 F.2d at 854.[4]

## III. Discussion

■ We review the district court's denial of a motion to vacate the judgment for an abuse of discretion. *See SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir.2001). Deference to the district court's use of discretion is heightened where the court has been overseeing complex institutional reform litigation for a long period of time. *See Stone*, 968 F.2d at 856. We review de novo, however, any questions of law under-

---

**3.** We have also previously recognized 28 U.S.C. § 1292(a) as a basis of our jurisdiction in appeals of orders denying motions to modify consent decrees. *See United States v. Berke*, 170 F.3d 882, 883 (9th Cir.1999); *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1401 n. 2 (9th Cir.1997).

**4.** We do not find that the issue regarding the scope of the plaintiff class is "inextricably bound up" with the motion to vacate the consent decrees, over which we certainly have jurisdiction. *See Plata v. Davis*, 329 F.3d 1101, 1107 (9th Cir.2003).

lying the district court's decision. *FDIC v. Aaronian,* 93 F.3d 636, 639 (9th Cir.1996).

 Rule 60(b) of the Federal Rules of Civil Procedure provides a mechanism for parties to seek relief from a judgment when "it is no longer equitable that the judgment should have prospective application," or when there is any other reason justifying relief from the judgment.[5] In *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court established a "flexible" standard to assess motions to modify or vacate consent decrees stemming from institutional reform litigation. A party must show that "a significant change in facts or law warrants the revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Id.* at 393, 112 S.Ct. 748. The party seeking modification of the consent decree bears the burden of establishing that the *Rufo* standard is met. *Id.* at 384, 112 S.Ct. 748.

*A. The District Court's Subject Matter Jurisdiction*

 The defendants first contend that the district court no longer has subject matter jurisdiction to enforce the consent decrees because the plaintiffs have not shown a continuing violation of federal law. The Supreme Court rejected this argument in *Rufo.* The Court made clear that, "to save themselves the time, expense, and inevitable risk of litigation," defendants in institutional reform cases may settle a dispute by undertaking to do more than the Constitution itself requires. *Rufo,* 502

U.S. at 389, 112 S.Ct. 748. The state officials in *Rufo* argued that decisions handed down after the consent decree was entered had clarified what the Constitution required, and that the district court could not enforce the consent decree beyond the constitutional requirements. The Supreme Court rejected that contention, noting that

> [t]he ·position urged by [the state officials] would necessarily imply that the only *legally enforceable* obligation assumed by the state under the consent decree was that of ultimately achieving minimal constitutional prison standards.... Substantively, this would do violence to the obvious intention of the parties that the decretal obligations assumed by the state were not confined to meeting minimal constitutional requirements. Procedurally, it would make necessary ... a constitutional decision every time an effort was made either to enforce or modify the decree by judicial action.

*Rufo,* 502 U.S. at 389–90, 112 S.Ct. 748(quoting *Plyler v. Evatt,* 924 F.2d 1321, 1327 (4th Cir.1991)) (emphasis in original, internal quotation omitted); *see also Suter v. Artist M.,* 503 U.S. 347, 354 n. 6, 112 S.Ct. 1360, 118 L.Ed.2d 1 ("[P]arties may agree ·to provisions in a consent decree which exceed the requirements of federal law."); *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) ("[A] federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded

---

**5.** Rule 60(b) provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

after a trial."); *Cooper v. Noble*, 33 F.3d 540, 545 (5th Cir.1994) ("[A] court may enforce agreements in consent judgments that are not constitutionally mandated."). *Rufo* makes clear that a party seeking to enforce a consent decree does not need to show a continuing violation of federal law. To hold otherwise would completely eviscerate the central purpose of consent decrees, which is to enable parties to avoid the expense and risk of litigation while still obtaining the greater enforceability (compared to an ordinary settlement agreement) that a court judgment provides. *Cf. Frew ex rel. Frew v. Hawkins*, —— U.S. ——, ——, 124 S.Ct. 899, 903, 157 L.Ed.2d 855 (2004) ("A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and expect will be reflected in, and as enforceable as, a judicial decree . . . .") (internal quotations omitted); *Slaven v. Am. Trading Transp. Co., Inc.*, 146 F.3d 1066, 1070 (9th Cir.1998) ("The purpose of a consent judgment is to resolve a dispute without further litigation . . . .").

We recognize that some of the language in *Washington v. Penwell*, 700 F.2d 570 (9th Cir.1983), suggests that, without a continuing violation of federal law, a consent decree cannot be enforced against state defendants. *See, e.g., id.* at 574 ("If general legal services for prisoners were required by the Constitution, we might be able to enforce this provision, notwithstanding the state's protest."). A close reading of *Penwell* makes clear, however, that our decision in that case was based on a finding that the enforcement of the disputed provision of the consent decree would violate the Eleventh Amendment. *See id.* at 575("The funding provision was not intended to bind the individuals, but rather the state, something it could not do under the Eleventh Amendment.").[6] Moreover, *Penwell* was decided before the Supreme Court's decisions in *Firefighters* and *Rufo*. Those decisions made clear that federal courts can enforce consent decrees which require state officials to do more than what federal law demands even without a showing of an ongoing violation of federal law.

■■■■ This is not to suggest that federal courts can enter consent decrees against state officials when federal rights are not involved. As the Supreme Court explained in *Firefighters*, "a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Firefighters*, 478 U.S. at 525, 106 S.Ct. 3063. The consent decree must also "come within the general scope of the case made by the pleadings, and must further the objectives of the law upon which the complaint was based." *Id.* (internal quotations and citation omitted). These requirements are met by the consent decrees entered in this case. The complaint alleged violations of federal constitutional and statutory rights. The defendants were successful in having some of the claims dismissed but, notably, the district court held that the federal constitutional claims raised genuine issues of fact to be resolved at trial. *See Evans v. Jeff D.*, 475 U.S. 717, 722, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). The district court therefore had subject matter jurisdiction over the case. *See* 28 U.S.C. § 1331. The consent decree it entered, while extensive, came within the general scope of the pleadings and furthered the objectives upon which the complaint was based.[7]

---

6. As we will explain below, the Eleventh Amendment basis for *Penwell* has been undermined, if not overruled, by the Supreme Court's recent decision in *Frew*.

7. The complaint alleged that the defendants' failure to provide appropriate mental health services to the plaintiff class violated the plaintiffs' rights to equal protection and due

Once the decree was entered, the district court retained jurisdiction to enforce it, *see California v. Randtron*, 284 F.3d 969, 974(9th Cir.2002), and the text of the agreement explicitly provided that the district court retained jurisdiction for enforcement.[8] *See Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir.1997) (holding that the district court retained jurisdiction where consent decree explicitly provided for such jurisdiction).

The defendants argue that there is no longer a federal interest involved in this case, but they overlook the strong federal interest in ensuring that the judgments of federal courts are meaningful and enforceable. *See Frew*, — U.S. at —, 124 S.Ct. at 905 ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced."). Thus, even assuming that defendants are no longer in violation of federal law, the district court continues to vindicate federal interests by ensuring that its judgment is enforced.[9] For this reason, the defendants' argument that the provision of cer-

tain services is not mandated by the Constitution misses the point: after a consent decree is properly entered, it is the defendants' voluntary assumption of an obligation to provide those services that requires them to comply. *See Firefighters*, 478 U.S. at 525, 106 S.Ct. 3063("[I]n addition to the law which forms the basis of the claim, the parties' consent animates the legal force of a consent decree."); *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 1005 (9th Cir.2000) ("[C]ontinuing decrees entered by consent of the parties may, *precisely because of their consensual nature*, provide more than the constitutional minimum . . . .") (emphasis added).[10]

We do not suggest that, once state officials have entered into a consent decree, they are bound forever no matter what the circumstances. As *Rufo* makes clear, federal courts are to apply a flexible standard in assessing motions under Rule 60(b). If the state defendants make the appropriate showing, the district court may vacate the consent decrees or modify their terms. We hold only that the state officials in this

---

process, as well as a number of federal and state statutory rights. The complaint's prayer for relief sought, in general terms, the type of services that the defendants eventually agreed to provide in the 1983 consent decree, and which were further detailed in the later decrees.

8. Paragraph 24 of the 1983 consent decree provided: "The court may retain jurisdiction over this matter for five (5) years *or* until satisfied by stipulation or otherwise that the claims for relief as alleged in the Complaint herein have been adequately addressed." (emphasis added).

9. The defendants have not argued either here or before the district court that they are in compliance with the requirements of the consent decrees. *Cf. Collins v. Thompson*, 8 F.3d 657, 658 (9th Cir.1993) (approving the district court's decision to vacate a consent decree after the state had met the terms of the decree).

10. Defendants rely on broad language in the plurality opinion in *Evans v. City of Chicago*, 10 F.3d 474 (7th Cir.1993) (en banc), which purports to require a showing of a "substantial claim under federal law" for a federal court to enforce a consent decree. As other courts have pointed out, the holding in *Evans* was much narrower than the plurality opinion suggests. *See Evans*, 10 F.3d at 483 (Ripple, J., concurring); *see also Johnson v. Florida*, 348 F.3d 1334, 1348 (11th Cir.2003); *but see David B. v. McDonald*, 156 F.3d 780, 782 (7th Cir.1998) (adopting principle announced in *Evans* ). In any event, the Supreme Court's recent decision in *Frew* makes clear that, once a consent decree is entered, the plaintiffs are not required to show a continuing violation of federal law in order to enforce the decree. *See Frew*, — U.S. at — – —, 124 S.Ct. at 905–06.

case have not made the required showing: they have not shown that circumstances in law or fact have changed so significantly that relief from the judgment is warranted. *See Rufo,* 502 U.S. at 384, 112 S.Ct. 748. They also have not shown that continued enforcement of the consent decree would require them to violate the law, *see id.* at 388, 112 S.Ct. 748; *Firefighters,* 478 U.S. at 526, 106 S.Ct. 3063, or that the requirements of the decree have become so onerous, unworkable, or detrimental to the public interest that relief under Rule 60(b) is warranted. *See SEC v. Coldicutt,* 258 F.3d 939, 942 (9th Cir.2001); *Heath v. DeCourcy,* 992 F.2d 630, 635 (6th Cir. 1993). The state officials here claim only that they have met the minimum constitutional requirements,[11] and that the district court therefore cannot enforce any obligations in the consent decrees that extend above the constitutional floor. As we have made clear, this is not a sufficient showing for relief under Rule 60(b). *See Rufo,* 502 U.S. at 391, 112 S.Ct. 748. The district court did not abuse its discretion in denying the motion to vacate the consent decrees on this ground.

## B. Eleventh Amendment Immunity

The defendants' second contention is that the Eleventh Amendment bars the enforcement of the consent decrees. They argue that the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows suits for prospective injunctive relief against state officials, is premised on the fact that those officials are acting in violation of federal law. The defendants contend that, without a showing that federal law continues to be violat-

ed, the *Ex parte Young* doctrine becomes inapplicable and the Eleventh Amendment prevents federal judicial action against the state.

In a recent decision, the Supreme Court unanimously rejected the contentions made by the defendants in this case. *See Frew ex rel. Frew v. Hawkins,* —— U.S. ——, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). In *Frew,* Texas officials had also argued that "a federal court should not enforce a consent decree arising from an *Ex parte Young* suit unless the court first identifies, at the enforcement stage, a violation of federal law . . . ." *Id.* at 904. The Supreme Court made clear that, as long as the consent decree is consistent with the requirements of *Firefighters v. City of Cleveland* and *Ex parte Young,* enforcement of the decree would not violate the Eleventh Amendment. *Id.* at 904; *see also Labor/Cmty. Strategy Ctr. v. L.A. County Metro. Transp. Auth.,* 263 F.3d 1041, 1050 (9th Cir.2001) ("[F]ederalism concerns in institutional reform litigation . . . do not automatically trump the powers of federal courts to enforce the Constitution or a consent decree.") (quoting *Stone v. City and County of San Francisco,* 968 F.2d 850, 861 (9th Cir.1992)). As we have already explained, the consent decrees at issue in this case meet the requirements set forth in *Firefighters.* In addition, the relief embodied in the consent decrees is within the scope of *Ex parte Young,* as it entails prospective injunctive relief requiring compliance by state officials. *See Frew,* —— U.S. at ——, 124 S.Ct. at 903. Continued enforcement of the consent decrees therefore does not violate the Eleventh Amendment.[12]

---

**11.** However, even this assertion is disputed. In its order of September 28, 2000, the district court noted that, "[d]espite the time and resources that have been expended on this matter, the State has, at this point, addressed

only the most obvious violations of the plaintiffs' constitutional rights."

**12.** We note that the Supreme Court emphasized that principles of federalism require dis-

855

## IV. Attorney's Fees

■ Because plaintiffs are the prevailing party in this appeal, they are entitled to attorneys' fees under 42 U.S.C. § 1988. *See Corder v. Gates*, 104 F.3d 247, 249 (9th Cir.1996). As we noted in an earlier appeal, "[t]he issues in [this appeal] are separate from the settlement of the underlying litigation and the waiver of attorneys fees in the settlement does not affect our disposition here." *Jeff D. v. Andrus*, 899 F.2d 753, 765 (9th Cir.1989).

## V. Conclusion

We have no doubt that the three consent decrees entered in this case impose substantial obligations on Idaho state officials. The defendants, however, have no one but themselves (or their predecessors) to blame for those obligations. After failing to comply with the first decree, the defendants extended their obligations further in 1990 in order to avoid contempt. They did the same in 1998. The plaintiffs and the district court have been lenient—indeed, perhaps too lenient—in encouraging negotiation instead of conflict when confronted with the defendants' lack of compliance. We will not punish the good faith of the plaintiffs and the district court by freeing the defendants from the obligations they have voluntarily undertaken over twenty years.

We recognize that state officials labor under significant budgetary and administrative constraints. Perhaps once the state has made significant efforts to comply with the promises embodied in the consent decrees, it may be appropriate for the district court to vacate the consent

decrees in this case. In the meantime, and without a more compelling showing, we cannot allow these state officials to break the promises they have made—under the aegis of the federal courts—to a class of some of Idaho's most vulnerable citizens.

**AFFIRMED.**

trict courts enforcing consent decrees to give significant weight to the views of state officials. *Frew,* —— U.S. at ——, 124 S.Ct. at 906 (citing *Rufo,* 502 U.S. at 392, 112 S.Ct. 748). As *Rufo* counseled, district courts must be flexible in modifying consent decrees when

state officials establish significant changes in law or facts. However, when—as is the case here—such changes are not established, the consent decree "should be enforced according to its terms." *Frew,* —— U.S. at ——, 124 S.Ct. at 906.