TOPANGA PRESS, INC.,
et al., Plaintiffs,

v.

CITY OF LOS ANGELES, a municipal
corporation, et al., Defendants.

Nos. CV 88–7837 WMB, CV 89–2069–RG,
CV 89–3791 RG, CV 91–0689–RG, CV
91–1035 RG, CV 91–1122 RG, CV 91–
1653 RG.

United States District Court,
C.D. California.

Aug. 30, 2005.

G. Randall Garrou, John H. Weston, Weston Garrou & DeWitt, Los Angeles, CA, for Topanga Press Inc., Plaintiff.

L. Wayne Mooney, Michael L. Klekner, Los Angeles City Attorney's Office, General Counsel Div., Los Angeles, CA, for City of Los Angeles, a municipal corporation, Defendant.

Michael L. Klekner, Los Angeles City Attorney's Office, Los Angeles, CA, for Los Angeles City of a municipal corporation, Franklin P. Eberhard in his personal capacity & his official capacity as Chief Zoning Administrator of the City of Los Angeles, John Mepham, in his personal capacity & his official capacity as an inspector of the Department of Building & Safety of the City of Los Angeles, Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO VACATE CONSENT DECREE

BYRNE, District Judge.

### I. Facts

In 1989, Stuart D. Parr (Parr) and Brand X Video (Brand X) filed separate actions challenging the constitutionality of Los Angeles's adult arcade permitting process. Parr and Brand X argued that the permit process violated the First Amendment by creating the likelihood that the government would arbitrarily deny adult arcade permits, thereby suppressing speech. The Los Angeles Municipal Code (L.A.M.C.), as it then existed, did not require the Board of Police Commissioners (the Board) to act on an adult arcade application within any specified period of time. In addition, the Board was authorized to deny permit applications if it found "that [the] said operation [would] not comport with the peace, health, safety, convenience, and general welfare of the public." Finally, pursuant to L.A.M.C. § 12.26(A)(2), the Board could not issue an adult arcade permit without the prior approval of the Department of Building and Safety (DBS). The DBS, in turn, was not subject to any time limits for approving or denying such permits.

While the plaintiffs' cases were pending before the district court, the Supreme Court decided *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). In *FW/PBS*, the Court invalidated an adult business licensing scheme that required a police department to grant or deny a license application within 30 days, but also required approval by other agencies that were not subject to any time limit. The Court ruled that any licensing scheme that regulates constitutionally protected adult speech must (1) "provide for definite limitations on the time within which the licensor must issue the license," *id.* at 226, 110 S.Ct. 596; and (2) "provide an avenue for prompt judicial review so as to minimize suppression of the speech in the event of a license denial." *Id.* at 229, 110 S.Ct. 596. In the Court's view, any licensing scheme lacking these procedural protections "places unbridled discretion in the hands of a government official or agency ... and may result in censorship." *Id.* at 225, 110 S.Ct. 596 (internal quotations and citations omitted).

In light of *FW/PBS*, the City of Los Angeles decided to enter into a settlement agreement and consent decree with Parr, Brand X, and numerous other parties that

had filed similar suits.[1] Paragraphs 5(a) and 5(b) of the consent decree lists several procedures that the City must adhere to when enforcing its adult arcade permit regulations against the plaintiffs. For example, paragraph 5(a)(i) of the decree states that the City "shall not enforce the provisions of [L.A.M.C. § ](A)(2) (to the extent it requires approval from the [DBS] prior to issuance of any permit) as a condition precedent to the issuance of a picture arcade police permit." Dec. Michael Klekner, Ex. 1 at 5. Paragraph 5(b)(ii) says that "in the event there is not a final judicially reviewable decision ... on a picture arcade permit application within 30 days after the date an applicant initially files the permit application, the permit shall be deemed granted." *Id.* at 6. Paragraph 5(b)(iii) requires "that the order of the Board denying a picture arcade police permit shall explicitly set forth all bases upon which the Board relies for denying such merit ..." *Id.* The consent decrees includes additional procedures that govern other aspects of the adult arcade permit process.

Under the terms of the consent decree, the district court was "to retain permanent jurisdiction to enforce the terms of [the decree] and of the separate settlement agreement until such time as the City ... revises or amends the [L.A.M.C.]," "to conform to the terms and conditions set forth in the consent decree at paragraphs 5(a) and 5(b)." *See* Dec. Michael Klekner, Ex. 1 at 10, 23.

In the decade following the parties' 1991 agreement, the City did not amend the L.A.M.C. in the manner required by the consent decree. Instead, the City simply chose not to enforce its adult arcade provisions. In 2003–04, Los Angeles amended its adult business licensing laws. The new provisions altered several aspects of the old adult arcade permitting process. For example, L.A.M.C. § 103.29 now requires the Board to act on an adult arcade permit application within forty-five days. *See* Dec. Michael Klekner, Ex. 3 at 53. Section 103.31 lists the exact grounds on which the Board may deny a permit application. *Id.* at 54. The City has amended almost every other provision of the old permitting process. However, it has not implemented the exact procedures listed in paragraphs 5(a) and 5(b) of the consent decree.

On September 7, 2004, the City filed a motion to vacate the 1991 decree. The Court heard oral argument on December 15, 2004. At that time, the Court suggested to the parties that it construe the City's motion as an order to show cause whether the amended L.A.M.C. violates the consent decree. The parties declined this suggestion and agreed that they would prefer to proceed with the motion to vacate. The Court, at the request of both parties, heard a second round of oral argument on January 28, 2005. During the second hearing, the City requested an opportunity to file a supplemental brief explaining why the amended L.A.M.C. satisfies the requirements of the consent decree. The Court permitted another round of briefing and held a third hearing on April 7, 2005.

## II. Discussion

The City offers three arguments in support of its motion to vacate the consent decree: (1) the case is moot; (2) the consent decree should be vacated pursuant to Rule 60(b)(5), and; (3) the Court no longer has jurisdiction to enforce the decree. The plaintiffs oppose the City's motion and argue that the decree should not be vacated until the L.A.M.C. has been amended to

---

1. The consent decree indicates that Parr and Brand X's lawsuits were consolidated with five other cases that challenged Los Angeles's adult arcade permitting process. The consolidated cases were collectively called *Topanga Press, et al. v. The City of Los Angeles, et al.*

fully incorporate the procedures listed in paragraphs 5(a) and 5(b) of the decree.

### A. Is the consent decree moot?

The City's first argument is that the consent decree should be vacated because "the controversy" in this case is moot. Specifically, the City contends that "the police permit regulations in effect in 1991 have been comprehensively amended and superseded .... Since the previous regulations no longer exist, this controversy is moot." Def.'s Mot. to Vacate at 8. The City's argument is unpersuasive.

 The mootness doctrine is, in effect, "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1509 (9th Cir.1994) (internal quotations and citations omitted). A case is moot if the outcome of the case "cannot affect the litigants' rights." *Id.* In this case, the parties disagree over the continuing prospective application of the 1991 consent decree. If the City is still bound by the decree, it cannot enforce certain adult arcade regulations against the plaintiffs. If the City is no longer bound by the decree, it can enforce its arcade regulations against the plaintiffs. Therefore there is sill a live controversy.

 The City cites several decisions in which courts have held that "[a]s a general rule, if a challenged law is repealed or expires, the case becomes moot." *See e.g., id.* at 1510 (internal citations omitted). In reliance on this case law, the City contends that "[n]o injury can now possibly result to plaintiffs premised on the superseded permit requirements and, without an injury, the Court lacks jurisdiction to impose a remedy premised on a violation of the 1991 consent decree." Def.'s Mot. to Vacate at 8. The defendant's argument mischaracter-

izes the nature of the current dispute. The plaintiffs are not challenging the "superseded regulations." They are challenging the City's attempt to vacate the obligations it imposed upon itself under the 1991 consent decree. Therefore the harm at issue in this case is not "premised on the superseded permit requirements;" it is premised on the requirements of the consent decree. Accordingly, the case is not moot.

### B. Should the consent decree be vacated under Rule 60(b)(5)?

 The City also argues that the Court should vacate the consent decree pursuant to Fed. R. Civ. Proc. 60(b)(5). In *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court explained that:

> Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree. Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree.

*Id.* at 383, 112 S.Ct. 748. Under the standard set forth in *Rufo,* it is only "appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show a significant change either in factual conditions or in law," *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), "or when enforcement of the decree without modification would be detrimental to the public interest." *Rufo,* 502 U.S. at 384, 112 S.Ct. 748. The City has not argued that any significant change in fact has occurred that makes it more difficult to comply with the 1991 decree. Nor has it alleged that enforcement of the decree would be detrimental to the public inter-

est. Instead, it argues that the Court should vacate the decree because of subsequent "changes in the law."

### 1. The constitutionality of the amended L.A.M.C. is irrelevant

■ The City argues that the Court should vacate the consent decree because Los Angeles has amended its adult arcade permit procedures to conform with the constitutional requirements set forth in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603. Even if the procedures in the amended L.A.M.C. satisfy *FW/PBS,*[2] the City's argument fails.

The "[Supreme] Court [has] made clear that, 'to save themselves the time, expense, and inevitable risk of litigation,' defendants in institutional reform cases may settle a dispute by undertaking to do more than the Constitution itself requires." *Jeff D. v. Kempthorne,* 365 F.3d 844, 851 (9th Cir. 2004) (citing and quoting *Rufo,* 502 U.S. at 389, 112 S.Ct. 748).[3] In *Rufo,* the defendants, who were state officials, argued that a district court could not enforce a consent decree that promised more than what the Constitution required. The Supreme Court rejected this argument, explaining that:

> [t]he position urged by [the defendants] would *necessarily* imply that the only *legally enforceable* obligation assumed by the state under the consent decree was that of ultimately achieving minimal constitutional ... standards.... Substantively, this would do violence to the obvious intention of the parties that the decretal obligations assumed by the state were not confined to meeting minimal constitutional requirements.

**2.** The Court takes no position as to whether the procedures in the amended L.A.M.C. actually satisfy *FW/PBS.*

**3.** Although *Kempthorne* refers to "institutional reform cases," the same standard applies to

502 U.S. at 389–90, 112 S.Ct. 748 (emphasis in the original). In *Jeff D. v. Kempthorne,* 365 F.3d 844, the Ninth Circuit rejected a similar request to modify a decree:

> The state officials here claim only that they have met the minimum constitutional requirement, and that the district court therefore cannot enforce any obligations in the consent decrees that extend above the constitutional floor. As we have made clear, this is not a sufficient showing for relief under Rule 60(b).

365 F.3d at 854. Under *Rufo* and *Kempthorne,* the mere fact that the City amended its adult arcade provisions to include constitutionally valid procedures is not a proper basis for vacating the decree.

### 2. The City's amendment of the L.A.M.C. does not constitute a significant change in the law

The City next argues that its recent amendments to the L.A.M.C. represent "a significant change in ... [the] law [that] warrants the revision of the decree." *Kempthorne,* 365 F.3d at 851 (citing *Rufo,* 502 U.S. at 393, 112 S.Ct. 748). This argument confuses the type of legal changes that constitute a "significant change in the law." A Court may revise or vacate a consent decree "when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo,* 502 U.S. at 388, 112 S.Ct. 748. In this case, the City would have to show that *FW/PBS,* or at least some relevant aspect of it, is "no longer good law." *Agostini,* 521 U.S. at 218, 117 S.Ct. 1997. However, the City argues that

"all petitions brought under the equity provision of Rule 60(b)(5)." *Bellevue Manor Assocs. v. United States,* 165 F.3d 1249, 1255 (9th Cir.1999).

it should no longer be bound by the consent decree because it has amended the offending law that it was initially enjoined from enforcing. Under *Rufo*, such amendments, standing alone, do not establish a proper basis for vacating the decree.[4]

### 3. FW/PBS has not been undermined by subsequent case law

Perhaps recognizing the weaknesses in its prior arguments, the City argued for the first time in a supplemental brief that the Supreme Court's holding in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), has been significantly altered by *Thomas v. Chicago Park District*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), and *City of Littleton, Colorado v. Z.J. Gifts, D–4, L.L.C.*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). Neither case amends *FW/PBS* in a manner that, for the purposes of this case, is significant.

In *Thomas v. Chicago Park District*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783, the plaintiff challenged "a municipal park ordinance [that] requir[ed] parties to obtain a permit before conducting large scale-events." *Id.* at 317, 122 S.Ct. 775. The Supreme Court denied the challenge and unanimously held that the procedural safeguards in *FW/PBS* do not apply to a "permit scheme regulating speech in a public forum." *Id.* at 322, 122 S.Ct. 775. The Court differentiated *FW/PBS*, noting that it "involved a licensing scheme that targeted businesses purveying sexually explicit speech." *Id.* at 323 n. 2, 122 S.Ct. 775. Nothing in *Thomas* undermines *FW/PBS*'s applicability to this case, which does not involve a public forum.

In *City of Littleton, Colorado v. Z.J. Gifts, LLC*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004), the Court reviewed "a city's 'adult business' licensing ordinance to determine whether it me[t] the First Amendment's requirement that such a licensing scheme assure prompt judicial review of an administrative decision denying a license." *Id.* at 776, 124 S.Ct. 2219. The Tenth Circuit held that the Colorado law was unconstitutional because it "did not assure that the city's license decisions w[ould] be given expedited judicial review." *Id.* at 777, 124 S.Ct. 2219. The Supreme Court reversed and ruled that *FW/PBS* does not require an adult business licensing scheme to include special fast-track review procedures. In the Court's view, "ordinary court procedural

---

**4.** In its supplemental brief, the City cites and discusses three cases in which courts modified an injunction after the enjoined party amended its prior statutes. None of these cases are applicable here. The first case, *Williams v. Butz*, 843 F.2d 1335 (11th Cir. 1988), was decided well before *Rufo*. The Eleventh Circuit has specifically abrogated the standard of review applied in *Butz*, noting that "*Rufo* substantially changed the relevant legal standards that district courts must employ in modifying consent decrees." *Blackmun v. Wille*, 980 F.2d 691, 692 n. 1 (11th Cir.1993). The second case, *Lynch v. Sessions*, 942 F.Supp. 1419 (M.D.Ala.1996), involved a motion to modify a judicially imposed injunction. *Rufo* acknowledged that a different standard applies when a party seeks to modify an injunction imposed by a court, rather than a consent decree that was voluntarily entered into by both parties "to save themselves the time, expense, and inevitable risk of litigation." *See* 502 U.S. at 389, 112 S.Ct. 748. The third case, *Spangler v. Pasadena City Bd. of Ed.*, 611 F.2d 1239 (9th Cir.1979), which was decided thirteen years before *Rufo*, also involved a court imposed injunction. *See Spangler v. Pasadena City Bd. of Ed.*, 519 F.2d 430, 432 (9th Cir.1975) ("after a nine-day trial, the District Court entered its Decree, enjoining the Board and the Superintendent of Schools 'from discriminating on the basis of race in the operation of the Pasadena Unified School District.' The court required the Board 'to prepare and adopt a plan to correct racial imbalance at all levels.' "). Therefore, none of the three cases that the City cites are applicable to this motion.

rules and practices ... provide reviewing courts with judicial tools sufficient to avoid delay-related First Amendment harm." *Id.* at 782, 124 S.Ct. 2219; *see also id.* at 781, 124 S.Ct. 2219 ("Colorado's ordinary 'judicial review' rules offer adequate assurance, not only that *access* to the courts can be promptly obtained, but also that a judicial decision will be promptly forthcoming.").

Although *Z.J. Gifts* did clarify the type of review procedures that are required under *FW/PBS*, that does not automatically entitle the City to relief from the consent decree. The Supreme Court has stated that "a clarification in the law [does] not, in and of itself, provide a basis for modifying a decree." *Rufo*, 502 at 390, 112 S.Ct. 748. Instead, the moving party must show that "the parties had based their agreement on a misunderstanding of the governing law." *Id.* In this case, the consent decree does not include a right to expedited review. Therefore the Court has no reason to believe that *Z.J. Gifts* altered the parties understanding of *FW/PBS*'s procedural requirements. No "significant change in the law" has occurred that would support vacating or amending the decree.[5]

### C. Does the Court have jurisdiction to enforce the consent decree?

■ Finally, the City argues that it has fully complied with the terms of the con-

sent decree, thereby stripping the Court of its jurisdiction to enforce the decree. The 1991 consent decree states that the Court:

> shall retain permanent jurisdiction to enforce the terms of this judgment and of the separate settlement agreement *until such time as the City shall revise or amend the Municipal Code to incorporate all of the provisions referenced in paragraph (4) of the accompanying settlement agreement.*

*See* Dec. Michael Klekner, Ex. 1 at 10–11 (emphasis added). Paragraph (4) of the settlement agreement, in turn, says that:

> Defendants agree not to enforce the provisions of [L.A.M.C.] § 103.101 against any of the plaintiffs ... unless and until that section and L.A.M.C. § 12.26 and 103.02(a) and (b) are amended to conform to the terms and conditions set forth in the Consent Decree at paragraphs 5(a) and 5(b).

*Id.* at 23. Therefore, if the City has amended the L.A.M.C. in a manner that "conforms" with paragraphs 5(a) and 5(b) of the consent decree, the Court no longer has jurisdiction to enforce either the decree or the accompanying settlement agreement.

The task for the Court, then, is to determine whether the procedures in the amended L.A.M.C. actually "conform to"[6]

---

**5.** The City's supplemental brief also implies, without ever directly arguing, that *Thomas* and *Z.J. Gifts* forbid the City from amending the L.A.M.C in the manner described in the consent decree. *See* Def.'s Supp. Br. at 6 ("[*Z.J. Gifts*] confirms the lessons learned from [*Thomas*]. The City needed to think well outside the consent decree box in order to enact police permit regulations that met current needs and current law .... Amending the 1991 version of Section 103.101 after [*Thomas*] and [*Z.J. Gifts*] could no longer be justified."). To the extent that the City is making such an argument, it has no merit.

Nothing in *Chicago Park District* or *Z.J. Gifts* forbids the City from enacting any of the procedures listed in the consent decree.

**6.** The City argues the word "conform" means "to make similar." That is not entirely accurate. The term "conform" means "to make the same *or* similar." Webster's New World Dictionary 293 (3d ed.1988) (emphasis added). Therefore although "conform" can mean "to make similar," it can also mean "to make the same." However, for the purposes of discussion, the Court will accept the City's definition.

the procedures listed in paragraph 5(a) and 5(b) of the consent decree. A brief comparison of these two documents reveals that there are several nontrivial differences between the procedures contained therein. The Court need only describe a couple of those differences to demonstrate that the City has not fulfilled its obligations under the consent decree.

### 1. Time within which an application must be ruled on and the effect of not acting within that time frame

Paragraph 5(b)(ii) of the consent decree requires:

> that in the event there is not a final judicially reviewable decision by the Board on a picture arcade police permit application within 30 days after the date an applicant initially files the permit application, the permit shall be deemed granted/issued and the applicant may lawfully commence operating the business.

The City argues that § 103.29(a) of the amended L.A.M.C. complies with the procedures in paragraph 5(b)(ii). Section 103.29(a) says that:

> (1) The Board ... shall issue a permit within 45 days of receipt of a complete application ...
> (3) if a hearing is requested, the time period ... is extended by 15 days.

The plaintiffs argue that the amended statute does not conform to the consent decree because it gives the City 45 or, if a hearing is requested, 60 days, to rule on an adult arcade application rather than 30 days. The City does not explain why 45 (or 60) days conforms to 30 days. Instead, it contends that a 45 or 60 day waiting period complies with the constitutional requirements set forth in *FW/PBS*. That, of course, is irrelevant.[7] The relevant comparison is whether the amended L.A.M.C.

conforms to the *consent decree*, not to the constitutional safeguards described in *FW/PBS*.

The plaintiffs also argue that the amended L.A.M.C. does not provide that an applicant's permit will be "deemed granted" if the Board fails to act within the requisite time period. The City concedes that the amended L.A.M.C. does not include the relief specified in the consent decree. However, the City argues that the L.A.M.C. conforms to this requirement by (1) permitting the Board to grant a temporary license while an application is being processed, *see* L.A.M.C. § 103.06.02, and (2) allowing the Board and the applicant to enter into mutually agreed upon extensions during the permitting process. *See* L.A.M.C. § 103.29(c). The obvious shortcoming of this argument is that neither § 103.06.02 or § 103.29 *require* the City to grant a permit if the Board fails to act within the relevant time frame. There is significant difference between giving the Board the option to issue a temporary license versus requiring the Board to issue a permanent license. Therefore, § 103.29(a) does not conform with paragraph 5(b)(ii) of the consent decree.

### 2. Grounds for revocation of an adult arcade permit

Paragraph 5(b)(viii) of the consent decree says that the

> Board shall not base a suspension or revocation [of an adult arcade permit] upon the grounds set forth in 103.101(e)(2) [i.e., permitting certain sexual activities to occur on the premises of the adult arcade] unless it makes an affirmative finding that the permittee had actual knowledge that such conduct regularly occurred on the premises and thereafter failed to take reasonable ame-

---

**7.** For further discussion, *see* infra, Part II.B.1.

liorative steps.... [C]onstructive notice shall be accomplished by providing the permittee or the on-premises manager with a copy of any relevant arrest reports and or appropriately transmitted formal notice of the permittee of such incidents.

The City argues that § 103.34.1–4 of the amended L.A.M.C. conforms to these requirements. This section authorizes revocation of a police permit if

> the permittee, his or her employee, agent, partner, director, office, stockholder, or manager has knowingly allowed or permitted any act of sexual intercourse, masturbation, ... [etc.] to be committed in or on the business premises.

The plaintiffs argue that § 103.34.1–4 does not comply with the consent decree because it allows the City to revoke a permit if an employee or agent, rather than the permittee himself, knowingly permits a sexual act to occur on the premises of an adult arcade. Furthermore, § 103.34.1–4 does not (1) compel the City to give the permittee notice of any such incidents; (2) require the City to make an affirmative finding that the improper conduct "regularly occurred" on the premises, or; (3) allow the permittee to take ameliorative steps prior to revocation.

Once again, the City's only response is that the amended L.A.M.C. has incorporated constitutionally valid suspension procedures. As explained above, that is irrelevant. It is obvious that the amended L.A.M.C. does not afford the plaintiffs the same procedural protections that are listed in paragraph 5(b)(viii) of the consent decree.

The plaintiffs have identified several other nontrivial differences between the procedures contained in the amended L.A.M.C. and those listed in the consent decree.[8] However, the Court is satisfied that the procedures discussed above demonstrate that the City has failed to amend the L.A.M.C. in a manner that satisfies its obligations under the consent decree. Therefore, the Court still has jurisdiction to enforce the consent decree.

### III. Conclusion.

For the reasons discussed above, the defendant's motion to vacate the consent decree is DENIED.

IT IS SO ORDERED.

---

8. For a complete list of these nontrivial differences, *see* Pls.' Opp'n to City's Mot. to Vacate Consent Decree, App. A (filed November 16, 2004); Pls.' Errata and Supp. Statement Identifying Consent Decree Requirements (filed February 10, 2005); Pls.' Reply to City's Supp. Br. Re. Mot. to Vacate at 7–9, 18–25 (filed March 28, 2005).